**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**No. 13-7194**

_____

## United States Court of Appeals
## for the District of Columbia Circuit

_____

DANIEL A. VIRTUE,

Plaintiff-Appellant,

v.

THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS RETIREMENT
AND FAMILY PROTECTION PLAN, INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, BRAD SLAWSON, JOHN F. MURPHY, FRED GEGARE,
ROME A. ALOISE, KEN HALL, and W.C. SMITH

Defendants-Appellees.

_____

On Appeal from the United States District Court for the District of Columbia
No. 12-cv-00516-JEB

_____

**BRIEF OF APPELLEES**

_____

Bradley T. Raymond
General Counsel
International Brotherhood of Teamsters
25 Louisiana Ave. N.W.
Washington, D.C. 20001
Tel. (202) 624-6945

Jeffrey B. Cohen
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1015 18th Street, N.W.
Suite 204
Washington, D.C. 20036
Tel. (202) 331-1331

Counsel for Defendants-Appellees

## CERTIFICATE OF COUNSEL

**(A) Parties.** The plaintiff/appellant is Daniel A. Virtue, who filed this action pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. In the district court, Virtue named as defendants the International Brotherhood of Teamsters Retirement and Family Protection Plan, the International Brotherhood of Teamsters, Ken Hall, John F. Murphy, W.C. Smith, and Rome A. Aloise. Virtue also erroneously named Fred Gegare and Brad Slawson as defendants in his first amended complaint. Messrs. Gegare and Slawson, formerly members of the Plan's Administrative Committee, were not served and did not appear as parties below.

**(B) Rulings Under Review.** The rulings under review are the district court's April 25, 2013 ruling on Virtue's motion for class certification published at 292 F.R.D. 8, [JA at 84-99],[1] and the district court's November 4, 2013 ruling on Defendants' motion for summary judgment published at 2013 U.S. Dist. LEXIS 157300, [JA at 500-512].

**(C) Related Cases.** This case has not previously been before this Court. Appellees are not aware of any related cases.

**(D) Rule 26.1 Corporate Disclosure Statement.** Appellees have no corporate disclosures to make.

---

[1]     "JA" refers to the parties' Joint Appendix.

i

## TABLE OF CONTENTS

CERTIFICATE OF COUNSEL ................................................................. i

TABLE OF AUTHORITIES ................................................................. iv

GLOSSARY……………………………………………………………….. 1

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION…………………………………….......... 2

STATEMENT OF ISSUES PRESENTED..............................................3

STATEMENT OF THE CASE.............................................................3

STATEMENT OF FACTS ...................................................................4

     I.     Structure Of The International Brotherhood Of Teamsters. ..................4

     II.    The International Brotherhood Of Teamsters Retirement And Family Protection Plan...............................................................................6

     III.   Stipend Employees. ...........................................................8

     IV.   Virtue's Employment. .........................................................10

     V.    Virtue's Request For An Application To Apply For Benefits. ............13

     VI.   The Proceedings Below. .....................................................17

SUMMARY OF ARGUMENT .............................................................19

STANDARD OF REVIEW ...............................................................21

ARGUMENT ................................................................................21

I.    Virtue's Claims Are Time-Barred. .......................................................21

    A.    The Clear Repudiation Rule Applies In Determining When The Statute Of Limitations On Virtue's Non-Fiduciary ERISA Claims Began To Run. ...............................................................21

    B.    Virtue's Perceived Right To Benefits Was Clearly Repudiated. ..................................................................................24

    C.    Virtue's Arguments That The Repudiation In This Case Was Not Clear Lack Merit. ...............................................................26

        i.    A Repudiation Need Not Contain Specific Language To Satisfy The Clear Repudiation Rule…………………..27

        ii.    A Gratuitous Consideration Of A Time-Barred Claim During The Administrative Process Does Not Make A Repudiation Less Clear………………………………...29

        iii.    A Repudiation Need Not Come From A Plan Or Plan Fiduciary Or Constitute An Adjudication Of A Claim To Satisfy The Clear Repudiation Rule…………………..30

    D.    Appellees Did Not Waive Their Statute Of Limitations Defense. .................................................................................32

II.    The District Court Properly Determined That Virtue Is Not An Adequate Class Representative. ..........................................................33

CONCLUSION ...................................................................................34

CERTIFICATE OF COMPLIANCE...................................................35

CERTIFICATE OF FILING AND SERVICE .......................................36

iii

# TABLE OF AUTHORITIES[2]

## Cases

*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) (per curiam). ........21

*Boyd v. United States Postal Serv.*, 752 F.2d 410 (9th Cir. 1985) ..........................33

*Brown v. Marsh*, 777 F.2d 8 (D.C. Cir. 1985)................................................ 32, 33

*Capital Cities/ABC, Inc. v. Racliff*, 141 F.3d 1405 (10th Cir. 1998).....................31

*Carey v. IBEW Local 363 Pension Plan,* 201 F.3d 44 (2d Cir. 1999)....................28

*Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336 (D.C. Cir. 1991) ......... 22, 26

*Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130 (2d Cir. 2001) ................ 22, 23

*Dix v. Total Petrochemicals USA, Inc.*, 540 Fed. Appx. 130 (3d Cir. 2013) ........23

*Dix v. Total Petrochemicals USA, Inc., Pension Plan*, 2014 U.S. LEXIS 2074
   (Mar. 24, 2014) .........................................................................................23

*Fallin v. Commonwealth Indus.*, 695 F.3d 512 (6th Cir. 2012)...............................30

*Gordon v. Deloitte & Touche, LLP Group Long Term Disability Plan*, Civil Action
   No. 12-55114, 2014 U.S. App. LEXIS 6688 (9th Cir. April 11, 2014) ..............30

*Great Rivers Co-Op. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893 (8th Cir.
   1997) .........................................................................................................33

*Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604 (2013) ........ 22, 23

*Hirt v. Equitable Ret. Plan for Employees., Managers and Agents*, 285 Fed. Appx.
   802 (2d Cir. 2008)........................................................................................32

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) ........................................31

*Kavanagh v. Noble*, 332 U.S. 535 (1947)..............................................................24

*Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718 (D.C. Cir. 2012) ...... 22, 26, 28, 31

---

[2]      Authorities upon which we chiefly rely are marked with asterisks.

*Kosty v. Lewis*, 319 F.2d 744 (D.C. Cir. 1963)........................................... 27, 29, 33

*Macomber v. Travelers Prop. and Cas. Corp.*, 894 A.2d 240 (Conn. 2006) .........33

*Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516 (3d Cir. 2007) ............................22

*Moore v. Moore*, 553 A.2d 20 (N.J. 1989) ...............................................................27

*Oaxaca v. Roscoe*, 641 F.2d 386 (5th Cir. 1981).....................................................33

*\*Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342 (1944)............21

*Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1349 (11th Cir. 2001) ......................33

*Raymond v. Callebaut*, 510 Fed. Appx. 97 (3d Cir. 2013) .....................................31

*\*Riley v. Metro. Life Ins. Co.*, 744 F.3d 241, 245 (2014) ................................. 23, 28

*Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1158 (7th Cir. 1999) ...........33

*Thompson v. Ret. Plan for Employees of S.C. Johnson & Son, Inc.*, 651 F.3d 600
   (7th Cir. 2011).................................................................................. 22, 28

*\*Tinley v. Gannett Co., Inc.*, 55 Fed. App'x 74 (3d Cir. 2003)........................ 31, 32

*Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325 (8th Cir. 1998)............................23

**Statutes**

28 U.S.C. § 1291…………………………………………………………….. .2

28 U.S.C. § 1331………………………………………………………………...2

29 U.S.C. § 1132(a)(1)(B) ...................................................................... 3, 17, 23

29 U.S.C. § 1132(a)(3)...............................................................................3, 17

29 U.S.C. § 1054(g) ........................................................................................17

**Rules**

Federal Rule of Civil Procedure 23………………………………………….33

Federal Rule of Civil Procedure 23(a) ...................................................................4

Federal Rule of Civil Procedure 23(b)(2) .................................................................4

Federal Rule of Civil Procedure 23(b)(3) .................................................................4

## GLOSSARY

| | |
|---|---|
| "Administrative Committee" | The Administrative Committee of the International Brotherhood of Teamsters Retirement and Family Protection Plan. |
| "Appellees" | The International Brotherhood of Teamsters Retirement and Family Protection Plan, the International Brotherhood of Teamsters, Ken Hall, John F. Murphy, W.C. Smith, and Rome A. Aloise. |
| "ERISA" | The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* |
| "IBT" or "Union" | The International Brotherhood of Teamsters. |
| "Plan" | The International Brotherhood of Teamsters Retirement and Family Protection Plan. |
| "Virtue" | Plaintiff-Appellant Daniel A. Virtue. |

## INTRODUCTION

As the district court aptly noted in its Memorandum Opinion granting Appellees' Motion for Summary Judgment, Virtue is "something of a collector." [JA at 500.] Over the course of his employment with the IBT, with his local union, and as a rank-and-file Teamster, Virtue collected memberships in at least four Teamsters-affiliated pension plans. [*Id*.] Through his action below, Virtue sought to acquire membership in (and benefits from) a fifth IBT pension fund – the Plan. [*Id*.] In granting Appellees' Motion for Summary Judgment and denying Virtue's

Motion for Class Certification, the district court ended Virtue's "quest to assemble a complete portfolio of IBT pension plans." [*Id.*]

As Virtue notes in his opening salvo, this appeal is not difficult. [Appellant Br. at 12.] There is only one issue before this Court[3]: whether the district court properly found – both in denying Virtue's motion for class certification and granting Appellees' motion for summary judgment – that ERISA's three year statute of limitations bars Virtue's claims for benefits and equitable relief. As demonstrated below, the district court properly determined that the statute of limitations bars Virtue's clams.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 because this case involved federal claims brought pursuant to ERISA. This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal is from a final judgment that disposed of all parties' claims. The district court issued an Order and Memorandum Opinion granting Appellees' Motion for Summary Judgment on November 4, 2013. Virtue's appeal was timely filed on November 26, 2013.

---

[3]     Although Virtue purports to set forth five separate issues in his brief [*see* Appellant Br. at 2-3], these five "issues" are merely variations on the same theme.

## STATEMENT OF ISSUES PRESENTED

1.      Whether the district court properly determined that Virtue's non-fiduciary ERISA claims are time-barred where the applicable statute of limitations is three years and the IBT placed Virtue on notice that he was ineligible to receive a benefit under the Plan more than six years prior to filing his lawsuit against Appellees?

2.      Whether the district court properly denied Virtue's motion for class certification where his own claim is time-barred?

## STATEMENT OF THE CASE

On April 4, 2012, Virtue filed a four count complaint; he amended his complaint two times. [JA at 3, 5 Dkt. ## 1, 26, 28.] At Count 1 of his second amended complaint, Virtue purported to bring a claim on behalf of himself and a class pursuant to 29 U.S.C. § 1132(a)(3) challenging the IBT's adoption of Amendment 2001-C to the Plan, which he contends reduced the accrued benefits of persons already in the Plan without sending out notice of the reduction in benefits. [JA at 15-16 ¶¶ 16-19.] At Count 2, Virtue sets forth the same allegations in Count 1 and states that in Count 2 he only seeks individual relief. [JA at 16 ¶¶ 20-21.] Virtue claimed to bring Counts 3 and 4 pursuant to 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1132(a)(1)(B), respectively, seeking an order from the district court that

Appellees pay him benefits in accordance with the terms of the Plan. [JA at 16-18 ¶¶ 22-32.]

On March 1, 2013, Virtue moved for an order that Count 1 of the complaint be certified as a class action in accordance with Rule 23(a) and Rule 23(b)(2) or Rule 23(b)(3) of the Federal Rules of Civil Procedure. [JA at 6 Dkt. # 35.] On April 25, 2013, the district court denied Virtue's motion for class certification. [JA at 83-96.]

Appellees moved for summary judgment on Virtue's claims on June 14, 2013. [JA at 7 Dkt. # 40; JA at 97-99.] The district court granted Appellees' motion for summary judgment on November 4, 2013 and dismissed all of Virtue's claims with prejudice. [JA at 499-512.]

## STATEMENT OF FACTS

### I.    Structure Of The International Brotherhood Of Teamsters.

To understand the context in which this litigation arose, one must understand the structure of the IBT and its affiliate organizations. The IBT has 1.4 million members and is one of the largest labor unions in the world. [*See* Teamsters Structure, IBT, http://www.teamster.org/content/teamsters-structure (last visited May 28, 2014.)] It is also the most diverse union in the United States. One out of every ten union members is a Teamster. [*Id*.] There are hundreds of IBT local unions across North America. [*Id*.] Unlike other labor unions, the IBT is structured

4

to promote strong local unions, and strong local leaders. [*Id.*] Locals retain their own expert labor lawyers, certified public accountants, full-time business agents, full-time officers (such as Presidents, Secretary-Treasurers, etc.) organizers, and clerical staff. [*Id.*] The members of each local elect their own officers, devise their own structure, and vote on their own bylaws, compatible with the IBT's Constitution and Bylaws. [*Id.*] While enjoying their independence, the locals benefit from the expertise and assistance of the IBT, and of the various conferences and councils in the union's structure. [*Id.*]

Teamsters Joint Councils are set up in areas with three or more local unions. Joint Councils help coordinate Teamsters activities in those areas. [*Id.*] They also help solve problems and decide some jurisdictional and judicial matters. [*Id.*] Finally, trade divisions and conferences aid Teamsters leaders throughout the country who share common interests and problems. [*Id.*] They provide an informational clearinghouse for locals that negotiate in the same industry or bargain with the same employer. [*Id.*] Local representatives discuss common problems and concerns at regular trade division and conference meetings. [*Id.*]

At the Union's headquarters in Washington, D.C., the IBT supports local unions with, among other things: coordination of national contract negotiations, political action, and organizing; training and educational programs for Teamsters officers, business agents, stewards, and members; and advice and assistance from

5

experienced organizers, negotiators, researchers, attorneys, safety and health professionals, auditors, and communications specialists. [*Id*.] The IBT's General President and General Secretary-Treasurer, who are elected at-large by the membership, serve as the IBT's executive officers. [*Id*.] The General Executive Board consists of the General President, General Secretary Treasurer and 23 Vice Presidents, who are elected by region or at-large. [*Id*.] Three Trustees, who are also elected at-large by the Union's membership, monitor and report on the IBT's finances. Convention delegates, who are elected by the membership locally, meet once every five years to amend the Constitution, nominate candidates for International Union Offices and adopt measures lending direction to the Union. Between Conventions, the General Executive Board, guided by the IBT's Constitution, is the final governing body. [*Id*.]

## II.  The International Brotherhood Of Teamsters Retirement And Family Protection Plan.

The Plan is a defined benefit pension plan that the IBT sponsors to provide pensions to its officers and employees who work at the Union's Washington, DC headquarters. [JA at 133.] The Plan is subject to the requirements of ERISA. [*Id*.] Unlike the Teamsters Affiliates Pension Plan ("Affiliates Plan"), the Plan is not designed to provide benefits to employees of Teamster locals and other subordinate bodies. [*Id*.] Article VI of the Plan sets forth the Plan's eligibility requirements. [JA at 137-138.] Prior to April 28, 1998, the Plan followed what is commonly

6

known as the "elapsed time method" for determining the participation of all officers and employees who had not become a member of the Plan as of December 31, 1975. [JA at 141-144, 164-165.] Under that method, an individual becomes eligible to participate in a Plan based on length of service as opposed to hours actually worked for their employer. [*Id*.] The Plan required officers and employees to remain employed for a continuous period of one year to become eligible for participation in the Plan. [*Id*.]

On April 28, 1998, the IBT amended the Plan's eligibility requirements (the "1998 Amendment"). [JA at 121, 133.] The 1998 Amendment required, in relevant part, that those officers and employees with an employment commencement date on or after July 1, 1998, complete 1,000 hours of service during a consecutive twelve month period before they would become eligible to participate in the Plan. [JA at 121, 133, 138.] The purpose of the 1998 Amendment was to limit participation in the Plan to those officers and employees of the IBT who actually worked a substantial number of hours for the IBT and to avoid the absurd result of allowing an employee of the IBT to become eligible for participation in the Plan even if that individual worked only one hour in his or her first year of employment with the IBT. [JA at 143.]

The IBT subsequently clarified the Plan's definition of employee by adopting Amendment 2001-C on November 16, 2001, to be effective as of April 1,

1999. [JA at 121, 153, 380-81.] Amendment 2001-C clarified the definition of the term "employee" to exclude "stipend employees" because the IBT believed that these part-time employees, by the nature of their work, were extremely unlikely to, and should not, work 1,000 hours or more in any consecutive twelve month period. [JA at 155, 159, 170.] That is, anyone hired as a part-time political designee (stipend employee) after April 1, 1999, would not be eligible to participate in the Plan. [JA at 152-153.] Amendment 2001-C further provided that the IBT's General Secretary-Treasurer would maintain a list of all of the IBT's stipend employees. [JA at 104-105.]

## III.   Stipend Employees.

Stipend employee positions with the IBT are patronage positions. They are part-time employees hired by the IBT's Office of the General President to work for a salary on an "as needed basis" after that Office determines that there is a need for an individual's services in a particular area – i.e., serving on a grievance committee or serving as part of a negotiating committee for one of the IBT's trade divisions or conferences. [JA at 157, 166-67, 170.] Most stipend employees work in the field with little to no supervision over their work. [JA at 160.] They keep their full-time "day jobs," as local union officials or employees of other Teamster entities. [JA at 170.]

8

Although the IBT has historically employed as part-time employees individuals that are now classified as stipend employees, the Plan did not specifically label these individuals as "stipend employees" until the adoption of Amendment 2001-C. [JA at 104-105.] Shortly thereafter, in May 2002, the IBT created an insert for its Human Resources Manual that described its policy concerning stipend employees ("Stipend Employee Policy"). [JA at 127, 179.] The Stipend Employee Policy noted that stipend employees were considered part-time salaried employees that performed services for the IBT "on an as needed basis" in addition to the services they performed for their local unions. [JA at 179.] The policy also made clear that stipend employees were not eligible for any IBT benefits other than travel and accident insurance (if applicable). [*Id.*]

On or around May 17, 2002, the IBT sent all stipend employees its Stipend Employee Policy with an accompanying cover letter. [JA at 178-79.] Specifically, Richard C. Bell (Executive Assistant to the General-Secretary) and Carlow Scalf (Executive Assistant to the General President) signed a letter dated May 17, 2002, that was sent to all stipend employees, including Virtue, with a copy of the IBT's employment policy concerning stipend employees. [JA at 178-79, and 183 at ¶ 5 (wherein Mr. Bell affirms that he personally authorized the mailing of the correspondence to all stipend employees, including Virtue).] The IBT explained the meaning of the term stipend employee in the cover letter and noted that those

9

receiving the letter "fall into this category." [JA at 178.] The IBT further stated that it was enclosing a copy of the Stipend Employee Policy, which "explains the policies applicable to your position, including your entitlements and benefits . . . ." [*Id.*] The employment policy clearly stated that stipend employees were not entitled to any benefits other than travel and accident insurance. [*See* JA at 179.] In response, at least two such stipend employees, Roger D. Hunt and Bob White, questioned their entitlement to benefits under the Plan. [JA at 175-77.] Both understood the IBT's correspondence as informing them that they were classified as a stipend employee and, as such, ineligible to participate in the Plan. [*Id.*] Virtue testified in his deposition in the proceedings below that he had no reason to believe that he had not received the same correspondence from the IBT in or around May 2002. [JA at 197.]

## IV.    Virtue's Employment.

Virtue worked as a truck driver for Howard Disposal and was a Teamsters member in Massachusetts beginning in the 1960s. [JA at 190.] In approximately 1979, he became employed by Roadway Express in Harrisburg, PA and was a member of Teamsters Local Union 776, an IBT affiliate.  [*Id.*] Virtue began his career as a union official working for Local Union 776. [JA at 190, 246 ¶ 3.] He eventually assumed the role of President of Local Union 776, a full-time position for which he traveled and received a salary for 60 hours of work per week until his

10

termination from that office on August 1, 2009.  [JA at 148, 191-92, 194, 209, 217-219.]

Virtue simultaneously held positions with Local Union 776 and the IBT between October 2000 and January 2007. Specifically, the IBT's General President, James P. Hoffa, appointed Virtue as the Eastern Region Joint Administrative Committee Chairman for Committee B on October 1, 2000, at a salary of $12,000 per annum. [JA at 220.] On May 4, 2001, General President Hoffa appointed Virtue to replace Thomas Griffith as the Eastern Region Freight Coordinator, at a salary of $40,000 per annum. [JA at 221.] Virtue testified in his deposition that, at the time of his appointment as Eastern Region Freight Coordinator in May 2001, he was aware of the Plan and believed he could become eligible to participate in the Plan if he met the participation requirements. [JA at 199, 228.] Even though Virtue's appointment letters said nothing about pension coverage as a result of his IBT employment, his reason for believing this was based on something Griffith, his predecessor, told or showed him. [*Id.*]

Nevertheless, Virtue soon became fully aware of the IBT's position that he was not eligible to participate in the Plan based on his classification as a stipend employee. [JA at 195-196, 222.] In addition to mailing him the Stipend Employee Policy on or about May 17, 2002, the IBT reminded Virtue that he was not eligible to participate in the Plan in 2006, in the context of the divorce proceedings

11

between Virtue and his then wife. [*See* JA at 222-24.] By letter dated April 10, 2006, his then wife's divorce attorney, Christina M. Veltri, requested that the IBT's "Benefits Administrator" provide her with information pertaining to "all benefits" Virtue had with the IBT while Virtue's divorce was pending. [JA at 222.] Veltri noted that she was enclosing an "Authorization for Release of Information," which authorized the IBT to release the requested information to Veltri. [*Id*.] Virtue signed the Authorization for Release of Information. [JA at 223.] The Authorization for Release explicitly stated that Virtue authorized the IBT to release to Veltri any and all information pertaining to "employment" and "retirement benefits." [*Id*.]

The IBT responded to Veltri's request by letter dated April 14, 2006, copying Virtue on the letter. [JA at 224.] The IBT informed Veltri that Virtue "is considered a 'Stipend Employee' and only receives the Travel Accident Insurance benefit from the [IBT]." [*Id*.] The IBT also enclosed a copy of its Stipend Employee Policy. [JA at 224-25] Virtue testified in his deposition that he recalled receiving a copy of the IBT's April 14, 2006 letter. Virtue understood that the letter informed him that he was not eligible to participate in the Plan. [JA at 195-96.] Thus, unlike his pensions from the New England and Central Pennsylvania Funds (which he was allowed to keep) or the Joint Council and Affiliates Plans (the lion's share of which were allocated to his ex-wife), the divorce proceedings

12

did not take into account any pension from the Plan in the division of marital assets. [JA at 192, 195-196.]

## V.    Virtue's Request For An Application To Apply For Benefits.

The IBT terminated Virtue's services as a stipend employee effective January 31, 2007. [JA at 126.] Virtue wrote the IBT in 2009 to request an application to receive benefits from the Plan. [JA at 115, 253-54 ¶ 22.] Thomas R. Metzinger, the Administrative Manager for the Plan, responded on behalf of the Plan on July 22, 2009, by denying Virtue's request. [JA at 117-19.] Metzinger explained that Virtue was a stipend employee not eligible to apply for benefits. [*Id*.]

Virtue responded on November 11, 2010. [JA at 115-16.] Virtue chastised the IBT for not providing him a proper denial that contained "an explanation of the plan's review procedures, time limits applicable to such procedures, or the required statement of a claimant's right to bring civil action under Section 502(a) of ERISA." [JA at 115.] He argued, among other things, that he should be entitled to receive benefits under the Plan because his duties as the IBT's Eastern Regional Freight Director required him to perform numerous duties, almost on a daily basis, and that he had payroll check stubs that established he worked in excess of 1,000 hours prior to the IBT's enactment of Amendment 2001-C. [JA at 115-16.] Virtue further informed the IBT that he "had been contemplating pursing formal legal

13

action" and "contacting . . . other individuals to join" the legal action. [JA at 116.]
Virtue claimed that he would "much prefer to reach an amicable solution without
utilizing the legal system." [*Id*.]

By letter dated January 12, 2011, Dale C. Harrison, the Plan's new
Administrative Manager, notified Virtue that the Plan's Administrative Committee
had considered Virtue's November 11, 2010 correspondence and concluded that
Virtue was not eligible for benefits under the Plan because he had been
"consistently named as a 'stipend' employee in every year from 2000 to date." [JA
at 112-14.] Harrison notified Virtue that he had the right to formally appeal the
Administrative Committee's decision. [JA at 113.] Virtue appealed the
Administrative Committee's decision by letter dated February 11, 2011. [JA at
111.] Virtue supplemented his appeal with a letter from his counsel, Joseph Semo,
dated August 4, 2011. [JA at 106-110.] His counsel maintained that Virtue was
entitled to a benefit from the Plan because Virtue was "quite certain" that he
satisfied the Plan's 1,000 hours eligibility requirement. [JA at 109.] However, no
evidence was provided to show that Virtue in fact worked 1,000 hours prior to the
IBT's adoption of Amendment 2001-C. [*Id*.] Virtue and his counsel also presented
his appeal in person, at a meeting of the Plan's Administrative Committee on
January 4, 2012. [JA at 101.]

Even though the Administrative Committee believed that Amendment 2001-C barred Virtue's participation in the Plan, it attempted to count his hours to test his assertion that he had in fact worked 1,000 hours prior to the IBT's adoption of Amendment 2001-C. [JA at 101-03.] The Plan did not track hours for employees prior to its enactment of Amendment 2001-C, nor did the IBT's payroll check stubs accurately reflect the hours employees worked. [JA at 156, 161-62, 234, 239.] The IBT did, however, require beginning in the last part of 2000 that all stipend employees complete and submit "Weekly Activity Reports" that tracked the work that stipend employees did on behalf of the IBT. [JA at 227.] Therefore, to discern whether Virtue actually worked 1,000 hours, John F. Murphy, as a member of the Administrative Committee, requested from the IBT all records concerning Virtue's employment with the IBT and Local 776 for review. [JA at 232-33.] Murphy then worked with the Plan's administrative office to collect and review this information. [*Id.*]

Murphy, along with the staff of the Plan's administrative office, reviewed Virtue's expense reports and Weekly Activity Reports covering the relevant time period – from October 1, 2000 through November 30, 2001 – and liberally assumed Virtue worked 10 hours for the IBT on each day that Virtue stated on his Weekly Activity Reports that he had devoted entirely to IBT business. [JA at 102, 163, 242-43.] If Virtue's activity report for a particular day included entries for

15

both the IBT and local union business, Murphy liberally credited Virtue with 5 hours of work for the IBT. [JA at 163.] Virtue's refusal to submit activity reports to the IBT during his first six months of employment with the IBT, in spite of multiple requests for him to do so, complicated matters. [JA at 227, 243.] Nevertheless, Murphy accounted for the time period for which Virtue failed to submit activity reports by generously giving Virtue the benefit of the doubt and credited Virtue with the same amount of hours as when he did submit activity reports. [JA at 243-44.] Murphy concluded that Virtue did not come close to working 1,000 hours for the IBT prior to the enactment of Amendment 2001-C, and reported his findings to the Administrative Committee. [JA at 235, 242-43.]

By letter dated March 9, 2012, Harrison informed Virtue that the Administrative Committee had denied his appeal. [JA at 101-103.] The Administrative Committee based its decision on two interrelated factors. [JA at 101-02.] The first factor was Virtue's status as a "stipend employee" throughout his tenure with the IBT. Because the IBT's General Secretary-Treasurer had designated Virtue as a "stipend employee" with respect to every year from 2000 to and including 2007, Virtue was not eligible to participate in the Plan under Amendment 2001-C. [*Id.*] The second factor was that sufficient evidence did not exist to demonstrate that Virtue worked at least 1,000 hours for the IBT during the

16

more than 13 month period from October 1, 2000 through November 16, 2001. [JA at 102.]

## VI.    The Proceedings Below.

On April 4, 2012, Virtue filed a four count complaint against the Plan and the IBT pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). [JA at 9-18.] Virtue asserted Counts 1 and 2 pursuant to § 1132(a)(3) and sought, on behalf of a class of similarly situated individuals (Count 1) and his own behalf (Count 2), plan reformation to rectify the Plan and the IBT allegedly violating ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), by adopting Amendment 2001-C. [*Id*. at 15-16 ¶¶ 16-21.] Virtue contended that Amendment 2001-C had the effect of cutting back the benefits of stipend employees under the Plan. [*Id*.] Virtue also brought Count 3 pursuant to § 1132(a)(3). [*Id*. at 16-17 ¶¶ 22-29.] In Count 3, Virtue sought an order requiring the Plan and the IBT to provide him with the required election forms under the Plan and to commence his benefits as he may elect. [*Id*.] At Count 4, Virtue sought a distribution of his benefits allegedly due under the Plan pursuant to § 1132(a)(1)(B). [*Id*. at 17-18 ¶¶ 30-32.]

Virtue filed an Amended Complaint on September 27, 2012 and a Second Amended Complaint on October 5, 2012. Virtue only made one material change in his Amended and Second Amended Complaints: he added members of the Plan's

17

Administrative Committee as defendants to his lawsuit. [JA at 5 Dkt. ## 1, 26 and 28.]

Virtue filed a motion for class certification on March 1, 2013, seeking to certify a class of "those individuals eligible to participate in the Plan on November 16, 2001, who have been excluded from participation on the basis of being a Stipend employee." [JA at 6 Dkt. # 35; JA at 95.] Appellees opposed Virtue's motion for class certification arguing, in part, that Virtue was an improper class representative because his own claim was time-barred by the applicable three year statute of limitations. [*See* JA at 88.] The district court agreed. [*See* JA at 83-96.]

The district court reasoned that a non-fiduciary ERISA claim can accrue when there has been a clear repudiation of benefits, and determined that Virtue's claim accrued no later than April 2006, when the IBT sent a letter to Veltri and Virtue concerning his entitlement to benefits. [JA at 91-92.] "At his deposition, Virtue confirmed that he received the letter and that he understood that the correspondence stated he was not eligible to participate in the Plan." [JA at 91.] The district court further found

> Given his deposition testimony, Virtue wisely does not appear to contest that he in fact received and understood this notice, nor does his Reply brief indicate that he believes this notice was not a clear repudiation of his right to benefits under the Plan. While his Reply takes issue with the adequacy of the notice mailed to all "stipend employees" in 2002, Virtue presents no argument or evidence to suggest that this individual letter was not "clear" or that it did not

18

"ma[k]e known [to him as] the beneficiary" that he was ineligible for participation in the Plan.

[JA at 91-92.]

The district court also found that the statute of limitations appears to bar any putative class member's claim. [JA at 93.] The May 2002 letter the IBT sent to all stipend employees that attached the Stipend Employee Policy informed those individuals that they are not entitled to any benefit other than travel accident insurance. [JA at 94.] The notice constituted a clear repudiation of any entitlement to Plan benefits for all stipend employees, which would mean that the statute of limitations expired in May 2005. [*Id*.]

On June 14, 2013, Appellees moved for summary judgment on all of Virtue's claims arguing, *inter alia*, that Virtue's claims are time-barred. [JA at 7 Dkt. # 40.] The district court agreed and granted Appellees' motion for summary judgment on November 4, 2013. [JA at 499-512.] Virtue's appeal followed.

## SUMMARY OF ARGUMENT

This case is simple. Virtue became aware that he was not entitled to benefits under the Plan no later than April 2006. By that time, Virtue had received the May 2002 letter from the IBT informing him of its policy that stipend employees were not entitled to any benefits other than travel accident insurance. Virtue thereafter received notification from the IBT during his divorce proceeding that he was not entitled to any benefits other than travel accident insurance. Virtue neither represented during

19

his divorce proceeding that he was entitled to benefits under the Plan nor contacted the Plan fiduciaries to challenge his non-entitlement to benefits. Instead, he waited more than six years to file this lawsuit against Appellees.

In denying Virtue's motion for class certification and granting Appellees' motion for summary judgment, the district court properly determined that Virtue's claims were time-barred by the applicable three year statute of limitations. Federal courts follow the discovery rule (referred to as the "clear repudiation rule" in the ERISA context) for determining when the statute of limitations begins to run. That rule provides that the statute of limitations begins to run when a party knew or should have known through due diligence that he or she has a cause of action. The district court properly found that this event occurred in Virtue's case no later than April 2006 when Virtue received notice from the IBT during his divorce proceedings that he was not entitled to any benefits other than travel accident insurance as a result of his employment with the IBT. He understood that notice to mean that he was ineligible for benefits under the Plan. Because Virtue filed his claims more than three years after April 2006, the district court properly found that his claims are time-barred. And, because Virtue's claims are time-barred, the district court properly determined that Virtue is an inadequate class representative.

20

## STANDARD OF REVIEW

Appellees agree with Virtue that review of the district court's grant of summary judgment is *de novo* and that the district court's denial of Virtue's motion for class certification is reviewed for abuse of discretion.

## ARGUMENT

### I.   Virtue's Claims Are Time-Barred.

Statutes of limitations serve a useful purpose in our society: they "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348 (1944). Accordingly, statutes of limitations "are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam).

### A.   The Clear Repudiation Rule Applies In Determining When The Statute Of Limitations On Virtue's Non-Fiduciary ERISA Claims Began To Run.

Virtue's arguments on appeal focus primarily on his disagreement with the district court on when his purported claims accrued and the three year statute of

21

limitations began to run. The district correctly determined that Virtue's alleged claims accrued once there was a clear repudiation of his right to benefits. [JA at 507.]

This Circuit determines when a limitations period accrues by consulting federal law. *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991) (R. B. Ginsburg, J.). The district court appropriately recognized that the discovery rule is the general accrual rule in federal courts. [JA at 89-90, 507 (citing *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 729 (D.C. Cir. 2012); *Connors*, 935 F.2d at 341).] That rule "provides that the statute of limitations begins when the plaintiff 'discovers, or with due diligence should have discovered,' the injury supporting the legal claim." *Kifafi*, 701 F.3d at 729 (quoting *Connors*, 935 F.2d at 343). In the ERISA context, this typically occurs after a plan issues a final denial of the plaintiff's claim for benefits. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013). However, as the district court found, [*see* JA at 89-90, 507], courts have "held that repudiation can trigger ERISA's statute of limitations if it is clear and made known to the plan beneficiary" (the clear repudiation rule). *Kifafi*, 701 F.3d at 729 (citing *Thompson v. Ret. Plan for Employees of S.C. Johnson & Son, Inc.*, 651 F.3d 600, 604 (7th Cir. 2011); *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520-21 (3d Cir. 2007); *Davenport v.*

22

*Harry N. Abrams, Inc.*, 249 F.3d 130, 134-35 (2d Cir. 2001); *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)).

Virtue attempts to circumvent the application of the clear repudiation rule to his claims by citing to the Supreme Court's recent decision in *Heimeshoff*. [Appellant Br. at 13-14.] This attempt fails, as *Heimeshoff* is inapposite. In *Heimeshoff*, the Supreme Court addressed whether a contractual limitations provision included in a plan can shorten the statute of limitations for 29 U.S.C. § 1132(a)(1)(B) claims. 134 S. Ct. at 609. The Supreme Court held that it could. *Id*. The *Heimeshoff* opinion did not address the applicability of the clear repudiation rule.

Notably, since the Supreme Court's decision in *Heimeshoff*, the First Circuit has applied the clear repudiation rule, *see Riley v. Metro. Life Ins. Co.*, 744 F.3d 241, 245 (1st Cir. 2014). Moreover, the Supreme Court has declined to grant certiorari of the Third Circuit's decision in *Dix v. Total Petrochemicals USA, Inc.*, 540 Fed. Appx. 130 (3d Cir. 2013), where the Court of Appeals affirmed the district court's grant of summary judgment based on the clear repudiation rule. *See Dix v. Total Petrochemicals USA, Inc., Pension Plan*, 2014 U.S. LEXIS 2074 (Mar. 24, 2014). Virtue has failed to provide this Court with a compelling reason

for not following suit and holding that the district court properly deemed the clear repudiation rule applicable here.[4]

## B.     Virtue's Perceived Right To Benefits Was Clearly Repudiated.

Although he does not dispute on appeal that he was made fully aware that he was ineligible for benefits no later than April 2006, Virtue still challenges the district court's well-reasoned decisions denying his motion for class certification and granting Appellees' motion for summary judgment. Virtue does not dispute that a three-year limitations period is applicable to his claims. [*See*, *generally*, Appellant Br.; JA at 506 (finding "[a]s the Court agrees this is the proper course – and as Plaintiff does not argue to the contrary – the three-year period will govern").] Virtue merely contests when his claims accrued.

Virtue maintains that the district court improperly applied the clear repudiation rule in determining when his non-fiduciary ERISA claims accrued. He complains that the district court should have instead determined that his claims

---

[4] Virtue's argument that permitting the application of the clear repudiation rule under these circumstances would allow Appellees to avoid liability where they disregarded ERISA and failed to enforce Plan terms, [Appellant Br. at 19-20], gets Virtue no further. Appellees dispute that Virtue's claims have any merit. Moreover, the district court did not resolve the merits of Virtue's claims; the district court dismissed Virtue's claims as time-barred. Therefore, any discussion of the merits is irrelevant to the Court's task here. *See Kavanagh v. Noble*, 332 U.S. 535, 539 (1947) (statute of limitations "periods are established to cut off rights, justifiable or not, that might otherwise be asserted . . . .")

accrued after the Plan completed its internal review process and issued a final administrative denial of his appeal. [Appellant Br. at 13-14.]

Applying the clear repudiation rule, the district court properly determined that Virtue's claims accrued no later than April 2006 when he was copied on a letter from the IBT to his then wife's divorce attorney. By that time, Virtue had received a copy of the IBT's May 2002 letter, which stated that stipend employees, like him, were entitled only to the benefits explained in the enclosed Stipend Employee Policy. [*See* Appellant Br. at 23; JA at 178.] The Stipend Employee Policy stated, in turn, that stipend employees were not entitled to any benefits except a travel insurance benefit (if applicable) and any other benefits specifically stated on their job action form. [JA at 179.] The district court properly determined that "[a]ny reasonable reader of this notice would conclude that he – as a stipend employee – was ineligible for pension benefits under the Plan." [JA at 95.] "Indeed, correspondence from two other members of the putative class confirms that the notice had precisely this effect: both Roger D. Hunt and Bob White indicated to the IBT that they understood the letter to inform them that they were ineligible for benefits under the Plan." [*Id.*]

Virtue had also signed an Authorization for Release of Information to his then wife's divorce attorney, which precipitated the IBT's April 2006 letter. [*See* JA at 222-23.] In that release, he explicitly requested that a determination be made

25

as to what "retirement benefits" he was entitled to as an IBT employee. [JA at 223.] As the district court found, the IBT's April 2006 letter in response to the Authorization for Release of Information "is crystal clear, and it certainly made the repudiation of any claim to benefits 'known to the plan beneficiary.'" [JA at 508 (quoting *Kifafi*, 701 F.3d at 729; citing *Connors*, 935 F.2d at 342).] The letter indicated "that Virtue 'is considered a Stipend Employee' and only receives the Travel Accident Insurance benefit from the [IBT],' and enclos[ed] a copy of the Stipend Employee Policy." [*Id.*] Further "[a]t his deposition, Virtue confirmed that he had received the letter and that he had understood that the correspondence stated he was not eligible to participate in the Plan." [*Id.*]  Virtue's claims, therefore, accrued no later than April 2006 and the three year statute of limitations expired no later than April 2009, three years **before** he commenced this litigation. [JA at 512.]

## C. Virtue's Arguments That The Repudiation In This Case Was Not Clear Lack Merit.

Virtue raises various arguments for why he believes the district court improperly determined that the repudiation of his right to Plan benefits – in 2002 and again in 2006 – was clear. First, he maintains that for the repudiation to have been clear, he would have had to have been informed of the alleged reduction of his accrued benefit in the Plan, his right to appeal an adverse benefit determination, or received a notice that complies with the requirements prescribed by Congress for notification in the event of a plan amendment that reduces a participant's

26

accrued benefit. [Appellant Br. at 23-25.] Second, Virtue contends, relying on *Kosty v. Lewis*, 319 F.2d 744 (D.C. Cir. 1963), that the Plan entertaining his administrative appeal after the statute of limitations had run on his claims somehow rendered the repudiation unclear. [Appellant Br. at 14-18.] Third, Virtue claims that the repudiation was unclear because it came from the IBT instead of the Plan, did not explicitly mention the Plan, and did not constitute an adjudication of his claims. [Appellant Br. at pp. 26-33.] These arguments disregard the facts of this case and relevant case law and need not detain the Court long.

> **i.      A Repudiation Need Not Contain Specific Language To Satisfy The Clear Repudiation Rule.**

Virtue did not dispute below, nor does he dispute on appeal, that after he received the IBT's April 2006 letter, he was fully aware that he was not entitled to any benefits from the Plan. Importantly, had Virtue believed that he was entitled to benefits from the Plan, he was required to disclose that fact during his divorce proceeding. *See*, *e.g.*, *Moore v. Moore*, 553 A.2d 20 (N.J. 1989) (acknowledging that a right to receive retirement benefits, which is related to the joint effort of the parties, is subject to equitable distribution). He did not. [*See* JA at 195-196.] Thus, any argument that the repudiation was not "clear" is disingenuous.

In any event, Virtue fails to cite to any case law to support his position, [Appellant Br. at 23-25], that for the repudiation to have been clear, he would have had to have been informed of the alleged reduction of his accrued benefit in the

Plan, his right to appeal an adverse benefit determination, or receive a notice that complies with the requirements prescribed by Congress for notification in the event of a plan amendment that reduces a participant's accrued benefit. This failure is for good reason, as courts have consistently held that a claim can accrue and the applicable statute of limitations starts to run even if the plan beneficiary is not provided with the information Virtue now contends is required. *See*, *e.g.*, *Kifafi*, 701 F.3d at 729 ("Whether repudiation may trigger the limitations period depends on what the prospective plaintiff should have understood from the miscalculated benefit payments"); *Riley*, 744 F.3d at 245 ("MetLife allowed Riley's LTD claim, but with its first check for $50, MetLife denied his explicit assertion that any award of that sum was inaccurate. This was not a complete repudiation of a formal denial of all LTD benefits. But it was a clear repudiation of [the appellant's] assertion that he was entitled to more than the amount MetLife actually awarded"); *Thompson*, 651 F.3d at 606 (holding that "when the participants received their lump-sum distributions, this served as an unequivocal repudiation of any entitlement to benefits beyond the account balance," even though the appellees did not provide notice to the plan participants that the calculation of the distributions was contrary to ERISA.); *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 46 (2d Cir. 1999) (benefits clearly repudiated with letter stating "you lost all your pension

28

services credits due to the fact that you incurred a break in service prior to being vested").

### ii.     A Gratuitous Consideration Of A Time-Barred Claim During The Administrative Process Does Not Make A Repudiation Less Clear.

Similarly, Virtue's reliance on *Kosty* to argue that the repudiation here was unclear because the Plan entertained his application for benefits after the statute of limitations had already expired on his claims is misplaced. *Kosty* is a pre-ERISA case that concerned, *inter alia*, whether the statute of limitations barred the appellant's claim that plan trustees acted arbitrarily and capriciously in denying his application for a pension. 319 F.2d at 746-47, 750. This Court determined in that case that the statute of limitations did not bar the appellant's claim because the case was "replete with documentary evidence" showing there was no "clear and continuing repudiation" where the trustees "were giving continuing consideration to appellant's eligibility" after its initial denial of the appellant's pension application. *Id.* at 750.

Unlike *Kosty*, this case is not "replete" with evidence showing there was "no clear and continuing repudiation." To the contrary, as the district court found, "Virtue's claim was repudiated in 2006, and he did not invoke the administrative – review process for more than three years." [JA at 511.] After invoking that process, "[t]he rejection was then confirmed and explained multiple times." [*Id.*] "The filing

29

of this later request for benefits does not alter the clarity of the initial denial, especially where the Plan's position never wavered or changed." [*Id.* at 511-512.]; *see also Fallin v. Commonwealth Indus.*, 695 F.3d 512, 515 (6th Cir. 2012) (clear repudiation rule still applicable even though the plaintiffs began the administrative process after the statute of limitations had run). To hold otherwise would only function to discourage the gratuitous reconsideration of stale claims that might merit reconsideration. *See Gordon v. Deloitte & Touche, LLP Group Long Term Disability Plan*, Civil Action No. 12-55114, 2014 U.S. App. LEXIS 6688 at *10 (9th Cir. April 11, 2014) ("Reviving a limitation period when an insurance company reconsiders a claim after the limitation period has run would discourage reconsideration by insurers even when reconsideration might be warranted.")

### iii. A Repudiation Need Not Come From A Plan Or Plan Fiduciary Or Constitute An Adjudication Of A Claim To Satisfy The Clear Repudiation Rule.

Virtue's argument that the repudiation in this case was unclear because the May 2002 and April 2006 correspondence were sent by the IBT rather than the Plan, did not explicitly mention the Plan, and did not constitute an adjudication of his claims, also fails. [*See* Appellant Br. at 26-33.] The district court squarely addressed Virtue's argument that a repudiation must be made by a fiduciary or a

30

plan in denying Virtue's motion for class certification.[5] The district court correctly found that Virtue's argument "is contrary to the teachings of the Supreme Court and several federal circuit courts, which suggest that notice from an employer can be adequate in these circumstances because the decision regarding which employees to include in an ERISA-covered benefit plan rests with the employer, not the plan itself." [JA at 94, citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *Tinley v. Gannett Co., Inc.*, 55 Fed. App'x 74, 78 (3d Cir. 2003); *Capital Cities/ABC, Inc. v. Racliff*, 141 F.3d 1405, 1409 (10th Cir. 1998).]

The clear repudiation rule also does not require that adjudication of a claim occur for the repudiation to be considered clear. The clear repudiation rule is a flexible standard; it only requires that a plaintiff know, or with due diligence should have known, about the injury he claims supports his legal claim. *See Kifafi*, 701 F.3d at 729. This can occur even in the absence of an adjudication of a claim. For example, courts have determined that a plaintiff's non-fiduciary claim was repudiated upon receiving notice from the Internal Revenue Service of the distribution of the plaintiff's 401(k) funds when the plaintiff never received the funds, *Raymond v. Callebaut*, 510 Fed. Appx. 97 (3d Cir. 2013), upon plaintiffs

---

[5] Virtue did not raise this issue in opposing Appellees' motion for summary judgment; therefore, the district court did not address the issue in granting Appellees' motion for summary judgment. [*See* JA at 500-12.] However, the district court's ruling on this point in the class certification denial was already the law of the case. [JA at 505-06.]

receiving notice from their employer that the employer will continue to treat the plaintiffs as independent contractors not included in the pension plan, *Tinley*, 55 Fed. Appx. at 76-79, and plaintiffs receiving a copy of a summary plan description explaining that the plaintiffs were not entitled to benefits after a plan amendment, *Hirt v. Equitable Ret. Plan for Employees, Managers and Agents*, 285 Fed. Appx. 802, 804 (2d Cir. 2008).

### D.    Appellees Did Not Waive Their Statute Of Limitations Defense.

Likewise, Virtue's argument that the district court erred by not finding that Appellees waived their statute of limitations defense lacks merit. As noted, Virtue did not invoke the administrative review process until after the statute of limitations had run on his claims. The same rationale was provided for rejecting Virtue's claim during the administrative process – i.e., Virtue was a stipend employee. This constituted nothing more than a mere investigation into Virtue's claim at his request. The district court properly recognized that "courts in this circuit have been 'loath to hold that mere investigation' of a plaintiff's complaint or claim 'without more constitutes a binding waiver of . . . [a] right to raise the timeliness issue.'" [JA at 509, quoting *Brown v. Marsh*, 777 F.2d 8 (D.C. Cir.

1985); citing *Boyd v. United States Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985);

*Oaxaca v. Roscoe*, 641 F.2d 386, 390 (5th Cir. 1981).][6]

## II.     The District Court Properly Determined That Virtue Is Not An Adequate Class Representative.

Finally, the Court should affirm the district court's denial of Virtue's motion

for class certification. Federal Rule of Civil Procedure 23 governs motions for

class certification. The district court properly found that "'[i]nherent in Rule 23 is

the requirement that the class representatives be members of the class.'" [JA at 92,

(quoting *Great Rivers Co-Op. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893,

899 (8th Cir. 1997)).] The district court further noted that "'generally a plaintiff

whose claim is time-barred may not represent the class." [*Id.* at 93, quoting

*Macomber v. Travelers Prop. and Cas. Corp.*, 894 A.2d 240, 251-52 (Conn. 2006);

citing *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1349 (11th Cir. 2001); *Robinson*

*v. Sheriff of Cook County*, 167 F.3d 1155, 1158 (7th Cir. 1999).] Because his

individual claims are time-barred, the district court correctly held that Virtue

cannot be considered a proper class representative.

---

[6]     Virtue relies exclusively on this Court's decision in *Kosty* to support his waiver argument. *Kosty*, however, is inapplicable as this Court did not even address the waiver doctrine, let alone rule on it. *See* 319 F.2d 744.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request that the Court affirm the district court's decisions denying Virtue's motion for class certification and granting Appellees' motion for summary judgment.

Dated: May 30, 2014                              Respectfully submitted,

*//s// Jason H. Ehrenberg*
_____
Jeffrey B. Cohen
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1015 18th Street, N.W.
Suite 204
Washington, D.C. 20036
Tel: (202) 331-1331
Fax: (202) 318-7071
Email: jbcohen@becounsel.com
        jhe@becounsel.com

Bradley T. Raymond
General Counsel
International Brotherhood of Teamsters
25 Louisiana Ave. N.W.
Washington, D.C. 20001
Tel: (202) 624-6945

Counsel for Defendants-Appellees

34

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains <u>7,845</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2007* in *14pt Times New Roman*; *or*

   [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 30, 2014                                    *//s// Jason H. Ehrenberg*
                                                       _____
                                                       *Counsel for Defendants-Appellees*

35

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of May, 2014, I caused this Brief of Appellees to be filed via U.S. mail, postage prepaid, and electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Joseph Semo, Esq.
> Kevin Stein, Esq.
> SEMO LAW GROUP
> 1800 M Street, N.W.
> Suite 730S
> Washington, D.C. 20036
>
> *Counsel for Plaintiff – Appellant*

I further certify that on this 30th day of May, 2014, I caused the required number of bound copies of the Brief of Appellees to be hand-filed with the Clerk of the Court.

*//s// Jason H. Ehrenberg*

_____

*Counsel for Defendants-Appellees*

36